## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **JASHUA JASCKSON** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:20-cv-1178** |
| | § | |
| **GARRETT HENDERSON,** | § | |
| **in his individual capacity, and** | § | |
| **FRUITA, COLORADO,** | § | |
| *Defendants*. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, JASHUA JACKSON, Plaintiff, complaining of GARRETT HENDERSON, in his individual capacity, and FRUITA, COLORADO, and for causes of action will respectfully show unto the Court as follows:

### I.
### PARTIES

1. Plaintiff Jashua Jackson is a resident of Mesa County, Colorado.

2. Defendant Garrett Henderson, is an individual residing in Delta, Delta County, Colorado and is a Police Officer with the Delta Police Department and may be served at his place of employment at the Delta Police Department located at 215 W 5th St, Delta, CO 81416 or wherever he may be found. Defendant Henderson is being sued in his individual capacity.

3. Defendant Fruita, Colorado is a political subdivision of the State of Colorado and may be served through the Fruita City Manager, Mike Bennett, located at 325 E. Aspen Ave., Fruita, CO 81521 or wherever he may be found.

1

## II.
## JURISDICTION AND VENUE

4.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 because the Defendants are domiciled and/or reside in the District of Colorado, and all or a substantial part of the causes of action accrued in the District of Colorado.

## III.
## FACTS AND ALLEGATIONS

5.      On May 3, 2018, Defendant Garrett Henderson, a Police Officer with Defendant Fruita, Colorado's Police Department, punched Plaintiff Jashua Jackson in the stomach without legal justification.

6.      The excessive use of force was filmed by a bystander in his home.

7.      Defendant Henderson was at all times acting under the color of law.

8.      Defendant Henderson and Fruita Police Officer Clem Rodriguez approached Jackson as he was on the grassy edge of Pine Street in Fruita, Colorado.

9.      This area of Pine Street is a residential neighborhood with infrequent traffic.

10.     There were no other pedestrians in the area.

11.     Jackson was intoxicated, but at no point during his interaction with Defendant Henderson or Officer Rodriguez was he violent or threatening.

12.     While Jackson was seated on the ground, the officers decided to detain Jackson.

13.     The officers were not arresting Jackson.

14.     Jackson was not charged with a crime related to this interaction.

15.    Defendant Henderson stood on Jackson's right side as Officer Rodriguez stood on Jackson's left side.

16.    Defendant Henderson and Officer Rodriguez grabbed Jackson by his arms and pulled him to his feet.

17.    Jackson did not attempt to run from the officers when they grabbed him to pick him up.

18.    Jackson did not attempt to roll away from the officers when they grabbed him to pick him up.

19.    Jackson did not push the officers' hands off him when they grabbed him to pick him up.

20.    Jackson did not pull his arms away from the officers when they grabbed him to pick him up.

21.    Jackson did not resist the officers when they grabbed him to pick him up.

22.    Jackson did not resist the officers as he was picked up off the ground.

23.    Jackson did not attempt to pull away from the officers as they picked him up off the ground.

24.    Jackson lifted his feet up as he was being picked up and then placed them on the ground to stand with the officers.

25.    After being picked up by the officers, Jackson did not attempt to flee.

26.    After being picked up by the officers, Jackson stood stationary without taking any steps.

27.    Jackson made no movements that could have been interpreted as an attempt to flee.

28.    After Jackson was picked up, he was standing in between Defendant Henderson and Officer Rodriguez.

29.    Defendant Henderson had ahold of Jackson's right arm.

30.    Officer Rodriguez had ahold of Jackson's left arm.

31.    At no point did Jackson threaten either officer.

32.    At no point did Jackson become violent with either officer.

33.    Jackson did not have a weapon.

34.    At no point did Jackson give either Defendant Henderson or Officer Rodriguez reason to believe he had a weapon.

35.    Neither Defendant Henderson nor Officer Rodriguez had a history of Jackson resisting them.

36.    Neither Defendant Henderson nor Officer Rodriguez had a history of Jackson being violent with them.

37.    While Jackson was being held by and standing in between both Defendant Henderson and Officer Rodriguez, Jackson did not resist being detained.

38.    At no point did Jackson actively resist Defendant Henderson.

39.    At no point did Jackson actively resist Officer Rodriguez.

40.    Without warning, Defendant Henderson cocked his right arm back and forcefully punched Jackson in the stomach.

41.    Defendant Henderson did not give Jackson any notice he was going to punch him.

42.    Jackson was unprepared to be punched and had not taken any defensive precautions.

4

43. Prior to Defendant Henderson punching Jackson without warning, Jackson had been compliant with all officer orders.

44. Prior to Defendant Henderson punching Jackson without warning, Jackson had not threatened either officer.

45. Prior to Defendant Henderson punching Jackson without warning, Jackson had not been violent with either officer.

46. Prior to Defendant Henderson punching Jackson without warning, Jackson had not attempted to flee either officer.

47. Prior to Defendant Henderson punching Jackson without warning, Jackson had not presented a danger to either officer.

48. Prior to Defendant Henderson punching Jackson without warning, Jackson had not actively resisted either officer.

49. Jackson was then placed into handcuffs and the back of the officers' police car.

50. Jackson was not taken to jail, but instead taken to a detox facility.

51. Jackson was not arrested for the commission of any crime.

52. Jackson was not charged with the commission of any crime.

53. As a result of Defendant Henderson punching Jackson without warning, Jackson suffered pain and physical injury to his stomach.

54. As a result of Defendant Henderson punching Jackson without warning, Jackson had "the wind knocked out of him."

55. As a result of Defendant Henderson punching Jackson without warning, Jackson's stomach hurt where Defendant Henderson struck him.

56. As a result of Defendant Henderson punching Jackson without warning, Jackson suffered mental anguish.

57. Jackson's injuries were not caused by any other means.

**The Fruita Police Department Maintains a Policy of Using Excessive Force**

58. David Krouse is the Fruita Chief of Police

59. As Chief of Police, Krouse has been delegated as the policymaker for the city of Fruita's Police Department by the Fruita City Council and City Manager.

60. As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is in direct command of the Fruita Police Department.

61. As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse has been delegated by the Fruita City Council and City Manager the responsibility of making rules and regulations affecting the police department in conformity with the ordinances and resolutions of the City, concerning the operation of the police department and the conduct of the police department.

62. As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing policies and procedures to be carried out by Fruita Police Officers.

63. As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing policies and procedures related to the use of force by Fruita Police Officers.

64. As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing proper training for Fruita Police Officers.

65.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing proper training in the use of force for Fruita Police Officers.

66.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse implemented an unconstitutional policy allowing officers to use force on suspects who were not actively resisting, threatening, or fleeing.

67.    This policy allowing the use of force on suspects who were not actively resisting, threatening, or fleeing, permitted the use of excessive force in violation of the Fourth Amendment to the Constitution of the United States of America.

68.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse implemented unconstitutional training which taught officers to use excessive force on suspects when force was not legally justified.

69.    Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that "[t]he officers acted reasonably, appropriately and in accordance with Fruita Police policy and training."

70.    As Chief of Police, Krouse is responsible for staffing decisions at the Fruita Police Department, including, assigning all members of the department to their respective posts, shifts, details and duties.

71.    As Chief of Police, Krouse permitted Defendant Henderson to continue to work while his actions were being reviewed.

72.    Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to

7

the Police Department, stated that Defendant Henderson's act of punching Jackson was "a trained and approved distractionary technique."

73. The fact that the city of Fruita trains and approves of the type of punch that Defendant Henderson delivered to Jackson without warning and without legal justification demonstrates unconstitutional training and policies as they relate to the use of force, as the training and policies will inevitably lead to the constitutional violations of Fruita's citizens, as it did in this case with Jackson.

74. Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that "[Jackson's] actions per our policy would fall into what we call an active resistance threshold."

75. However, Jackson was not actively resisting the officers; thus, per the Fruita policy, officers are allowed to punch suspects that are not actively resisting them. This creates an unconstitutional policy, as it will inevitably lead to the constitutional violations of Fruita's citizens, as it did in this case with Jackson.

**IV.**
**CAUSES OF ACTION**

**Count One**

**Excessive Force**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C § 1983**
**Defendant Henderson**

76. Jackson repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

77. Acting under the color of law, Defendant Henderson deprived Jackson of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to

8

the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

78.    Jackson brings this cause of action pursuant to 42 U.S.C. § 1983.

79.    The amount of force used by Defendant Henderson against Jackson as described above, specifically but not limited to, when Defendant Henderson punched Jackson in the stomach without warning, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Jackson.

80.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

81.    Jackson was not suspected of committing a serious offense when Defendant Henderson punched Jackson in the stomach without warning.

82.    Jackson was not suspected of committing a felony or violent misdemeanor when Defendant Henderson punched Jackson in the stomach without warning.

83.    Jackson was not being placed under arrest for suspicion of a crime when Defendant Henderson punched Jackson in the stomach without warning.

84.    Jackson was not threatening any officer or other person immediately prior to when Defendant Henderson punched Jackson in the stomach without warning.

85.    Jackson was not actively resisting officers immediately prior to when Defendant Henderson punched Jackson in the stomach without warning.

86.    Jackson was not attempting to flee immediately prior to when Defendant Henderson punched Jackson in the stomach without warning.

87.    A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Jackson, who was not threatening any officer or other

person, was not being arrested for suspicion of a crime, was not attempting to evade or resist arrest, and who the use of force was not warranted.

88.     A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Jackson, who was not threatening any officer or other person, was not being arrested for suspicion of a crime, was not attempting to evade or resist arrest, and who the use of force was not warranted.

89.     A reasonable officer in Defendant Henderson's shoes would know that punching Jackson in the stomach without warning, when he was compliant, non-resistant, non-threatening and restrained on both sides of his body by two officers is clearly unreasonable and excessive.

90.     As a direct result of the force used against him by Defendant Henderson, Jackson has suffered physical injury, pain and mental anguish for which he sues herein.

91.     These injuries were not caused by any other means.

## Count Two

### Causes of action against Defendant Fruita, Colorado under
### _Monell v. New York City Department of Social Services_
### Pursuant to 42 U.S.C § 1983

92.     Jackson repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

93.     The violations of Jackson's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Jackson's damages, and the conduct of Defendant Henderson were directly and proximately caused by the actions and/or inactions of Defendant Fruita, Colorado, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies and practices, and to the need for more or different training, supervision, investigation, or discipline in the

10

areas of: The use of excessive force on suspects who are not actively resisting, fleeing, or a danger to officers or others, such as Jackson in this case.

94.    To establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993) (citation omitted)).

95.    A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law' "; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." (emphasis added) *Id*. (citing *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir.2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) and *City of Canton v. Harris*, 489 U.S. 378, 388–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (internal quotation marks omitted)).

96.    An act committed by an official who has been delegated the power of "establishing final policy" will also constitute a municipal policy. *Novitsky v. City Of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

97.    In addition, "where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants," that failure to train may "be properly thought of as a city policy ... [and] is actionable under § 1983." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (internal quotation marks omitted)).

## Facts Regarding Defendant Fruita, Colorado's Policymaker

98.    David Krouse is the Fruita Chief of Police.

99.    As Chief of Police, Krouse has been delegated as the policymaker for the city of Fruita's Police Department by the Fruita City Council and City Manager.

100.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is in direct command of the Fruita Police Department.

101.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse has been delegated by the Fruita City Council and City Manager the responsibility of making rules and regulations affecting the police department in conformity with the ordinances and resolutions of the City, concerning the operation of the police department and the conduct of the police department.

102.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing policies and procedures to be carried out by Fruita Police Officers.

103.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing policies and procedures related to the use of force by Fruita Police Officers.

12

104.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing proper training for Fruita Police Officers.

105.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse is responsible for implementing proper training in the use of force for Fruita Police Officers.

## General Allegations of Unconstitutional Policy, Practice, and Training

106.    Defendant Fruita, Colorado maintained an unconstitutional policy and practice of using excessive force on suspects who were not actively resisting or fleeing arrest, a danger to the officers or others, or suspected of committing a dangerous or violent crime.

107.    Defendant Fruita, Colorado failed to provide adequate training for officers, including Defendant Henderson, regarding the use of force, although Defendant Fruita, Colorado was aware of the high likelihood of the use of excessive and unconstitutional force, such as was used in this case, due to the lack of adequate training.

108.    Defendant Fruita, Colorado, knowing of this high likelihood of illegal and excessive force, which would result in violations of the Fourth Amendment rights of its citizens, such as Jackson, was deliberately indifferent to the need for adequately training its officers on a constitutional policy.

109.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse implemented an unconstitutional policy allowing officers to use force on suspects who were not actively resisting, threatening, or fleeing.

13

110.    As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse implemented unconstitutional training which taught officers to use excessive force on suspects when force was not legally justified.

111.    This policy allowing the use of force on suspects who were not actively resisting, threatening, or fleeing, permitted the use of excessive force in violation of the Fourth Amendment to the Constitution of the United States of America.

112.    The constitutional violations in this case were the direct result of the deliberate indifference outlined above by Defendant Fruita, Colorado.

113.    The deliberate indifference of Defendant Fruita, Colorado was the moving force behind the violation of Jackson's constitutional rights.

114.    Defendants' actions constitute a violation of the well-settled right to be free from unreasonable seizures under the Fourth Amendment.

115.    As a direct result of these acts, Jackson has suffered physical injury, pain, suffering and mental anguish.

116.    Jackson was deprived of his constitutional rights to his damage.

## Specific Policy, Practice, and Training That Supports *Monell* Claims

117.    Defendant Fruita, Colorado, by way of its Chief of Police and policymaker for the Fruita Police Department, maintained a policy and practice that acts which do not amount to resistance or at most amount to passive resistance, such as standing stationary without fighting officers, amount to active resistance; and thus, justify the use of force.

118.    Defendant Fruita, Colorado, by way of its Chief of Police and policymaker for the Fruita Police Department, trained Fruita Police Officers, including Defendant Henderson, that acts which do not amount to resistance or at most amount to passive

14

resistance, such as standing stationary without fighting officers, amount to active resistance; and thus, justify the use of force.

### Specific Factual Allegations Supporting Claims

119.    Defendant Fruita, Colorado, by way of its Chief of Police and policymaker for the Fruita Police Department, maintained a policy and practice that acts which do not amount to resistance or at most amount to passive resistance, such as standing stationary without fighting officers, amount to active resistance; and thus, justify the use of force.

    a.    Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that "[t]he officers acted reasonably, appropriately and **in accordance with Fruita Police policy** and training."

    b.    Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that Defendant Henderson's act of punching Jackson was "a trained and **approved** distractionary **technique**."

    c.    Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that "[Jackson's] actions **per our policy** would fall into what we call an active resistance threshold."

    d.    However, Jackson was not actively resisting the officers.

    e.    Thus, per the Fruita policy, officers are allowed to punch suspects that are not actively resisting them.

f.  This policy is unconstitutional, as it will inevitably lead to the constitutional violations of Fruita's citizens, as it did in this case with Jackson.

120.  Defendant Fruita, Colorado, by way of its Chief of Police and policymaker for the Fruita Police Department, <u>trained Fruita Police Officers, including Defendant Henderson, that acts which do not amount to resistance or at most amount to passive resistance, such as standing stationary without fighting officers, amount to active resistance; and thus, justify the use of force</u>.

a.  Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that "[t]he officers acted reasonably, appropriately and **in accordance with Fruita Police** policy and **training**."

b.  Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that Defendant Henderson's act of punching Jackson was "a **trained** and approved distractionary **technique**."

121.  As Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, Krouse <u>ratified</u> Defendant Fruita, Colorado's unconstitutional policy and training.

a.  As Chief of Police, Krouse is responsible for staffing decisions at the Fruita Police Department, including, assigning all members of the department to their respective posts, shifts, details and duties.

16

b. As Chief of Police, Krouse permitted Defendant Henderson to continue to work while his actions were being reviewed.

c. Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that "[t]he officers acted reasonably, appropriately and **in accordance with Fruita Police policy and training**."

d. Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that Defendant Henderson's act of punching Jackson was "**a trained and approved** distractionary **technique**."

e. Upon review of the excessive force used by Defendant Henderson in this case, Krouse, as the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department, stated that "[Jackson's] actions **per our policy would fall into what we call an active resistance threshold**."

f. However, Jackson was not actively resisting the officers.

g. Thus, per the Fruita policy, officers are allowed to punch suspects that are not actively resisting them.

h. This policy is unconstitutional, as it will inevitably lead to the constitutional violations of Fruita's citizens, as it did in this case with Jackson.

## The Policy, Practice, and Training Caused the Constitutional Violation

122.    Defendant Henderson was trained pursuant to the training and policies implemented by Krouse, the Chief of Police and policymaker for the city of Fruita as it relates to the Police Department.

123.    Defendant Henderson punched Jackson in the stomach without warning because he did not receive adequate training on what constitutes active resistance thereby justifying the use of force.

124.    Defendant Henderson punched Jackson in the stomach without warning because Defendant Henderson was following his training on the unconstitutional policy maintained by Defendant Fruita, Colorado, which permitted the use of force on suspects who are not resisting, or at most only display passive resistance, such as standing stationary without fighting officers.

125.    As a result of Defendant Henderson punching Jackson without warning, Jackon suffered pain and physical injury to his stomach.

126.    As a result of Defendant Henderson punching Jackson without warning, Jackon had "the wind knocked out of him."

127.    As a result of Defendant Henderson punching Jackson without warning, Jackson's stomach hurt where Defendant Henderson struck him.

128.    As a result of Defendant Henderson punching Jackson without warning, Jackson suffered mental anguish.

129.    As a result of Defendant Henderson punching Jackson without warning, Jackson was scared and in fear.

130.    Jackson's injuries were not caused by any other means.

## V.
## **Exemplary Damages**

131.    Jackson repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

132.    When viewed objectively from the standpoint of Defendant Henderson, at the time of the occurrence, Defendant Henderson's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

133.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Henderson, Jackson is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

## VI.
## **Damages**

134.    Jackson repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

135.    Jackson's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Henderson's use of excessive and unreasonable force against Plaintiff as well as Defendant Fruita, Colorado's unconstitutional policies and training.

136.    As a result, Jackson is entitled to recover all actual damages allowed by law. Jackson contends Defendant Henderson's conduct constitutes malice, evil intent, or reckless or callous indifference to Jackson's constitutionally protected rights. Thus, Jackson is entitled to punitive damages against Defendant Henderson.

137.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Jackson was forced to suffer:

    a.    Physical injury;

b.      Physical pain and suffering; and

e.      Emotional distress, torment, and mental anguish.

138.    Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees, and costs of court.

## VII.
## Attorney's Fees

139.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## Jury Request

140.    Plaintiff respectfully requests a jury trial.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against the Defendants, for an amount in excess of the jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
JAMES P. ROBERTS
Scott H. Palmer, P.C.
15455 Dallas Parkway
Suite 540, LB 32
Addison, TX 75001
Telephone: (214) 987-4100
Fax: (214) 922-9900
Email: scott@scottpalmerlaw.com
        james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

20